**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DISCOVERY COMMUNICATIONS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No. 09-178-ER |
| v. ) | |
| ) | **DEMAND FOR JURY TRIAL** |
| AMAZON.COM, INC., ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT AMAZON.COM, INC.'S SECOND AMENDED ANSWER,**
**DEFENSES, AND COUNTERCLAIMS TO THE COMPLAINT**

Defendant and Counterclaimant Amazon.com, Inc. ("Amazon"), by and through its

attorneys, answers Plaintiff and Counterdefendant Discovery Communications, Inc.'s

("Discovery's") Complaint ("Complaint") and asserts defenses and counterclaims as follows:

**ANSWER**

1.      Amazon is without knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in paragraph 1 of the Complaint and, therefore, denies each and

every allegation of paragraph 1 of the Complaint.

2.      Amazon admits the allegations of paragraph 2 of the Complaint.

3.      Amazon admits that Discovery purports to bring this action under Title 35 of the

United States Code as a claim for patent infringement.  Amazon admits that jurisdiction is proper

in this Court pursuant to 28 U.S.C. §§ 1331 and 1338(a).  Amazon denies each and every

remaining allegation of paragraph 3 of the Complaint.

4.      Amazon admits that this Court has personal jurisdiction over Amazon.  Amazon

denies each and every remaining allegation of paragraph 4 of the Complaint.

5.      Amazon admits that venue is proper in this District under 28 U.S.C. §§ 1391 and

1400(b).

6.      Amazon admits that United States Patent No. 7,298,851 (the "'851 Patent") is entitled "Electronic Book Security and Copyright Protection System," which states that it issued on November 20, 2007. Amazon further admits that a copy of the '851 Patent was attached to the Complaint. Amazon is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 6 of the Complaint and, therefore, denies each and every remaining allegation of paragraph 6 of the Complaint.

7.      Amazon admits that Discovery purports to re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 6 of the Complaint. Amazon incorporates by reference its answers to paragraphs 1 through 6, as if fully set forth herein.

8.      Amazon denies each and every allegation of paragraph 8 of the Complaint.

9.      Amazon denies each and every allegation of paragraph 9 of the Complaint.

10.     Amazon denies each and every allegation of paragraph 10 of the Complaint.

11.     Amazon denies each and every allegation of paragraph 11 of the Complaint.

12.     Amazon denies each and every allegation of paragraph 12 of the Complaint.

13.     Amazon denies each and every allegation of paragraph 13 of the Complaint.

14.     In response to Discovery's Prayer for Relief, Amazon denies that Discovery is entitled to any relief sought in paragraphs 1 through 8 of the Prayer for Relief.

## DEFENSES

Amazon asserts the following defenses to Discovery's Complaint. Assertion of a defense is not a concession that Amazon has the burden of proving the matter asserted.

### First Defense
### (Non-Infringement)

15.     Amazon has not infringed and is not infringing U.S. Patent No. 7,298,851 (the "'851 Patent"), willfully or otherwise, directly or indirectly, either literally or by application of

the doctrine of equivalents, including through activities related to its Kindle, Kindle 2, and Kindle DX products.

**Second Defense**
**(Invalidity/Unenforceability)**

16.     The '851 Patent is invalid and/or unenforceable for failure to meet one or more of the conditions of patentability and/or patent eligibility specified in Title 35 of the United States Code, including, without limitation, sections 101, 102, 103, and/or 112.  Amazon incorporates by reference and re-alleges all of the paragraphs stated in the Counterclaims below as if fully set forth herein.

17.     One or more of the claims of the '851 Patent is unpatentable under 35 U.S.C. § 101 at least because the claims fail to satisfy the conditions and requirements for patentability under Title 35 of the United States Code, and are not directed to a new and useful process, machine, manufacture, or composition of matter, or any new and useful improvements thereof.

18.     The '851 Patent recites a filing date of September 21, 1999.

19.     U.S. Patent No. 4,855,725 to Fernandez (the "'725 Patent"), entitled "Microprocessor Based Simulated Book," was issued on August 8, 1989.  The '725 Patent was cited as grounds for rejection in an office action during the related co-pending prosecution of U.S. Patent No. 7,299,501 (the "'501 Patent") ("Electronic Book Selection and Delivery System Having Encryption and Security Features").  According to the examiner in the prosecution of the '501 Patent, the '725 Patent "teaches a method for restricting access to electronic books displayed on a viewer."  The '725 Patent is one example of a prior art reference that, alone or in combination with other references, renders the claims of the '851 Patent invalid under 35 U.S.C. §§ 102 and/or 103.

20.     One or more of the claims of the '851 Patent is invalid under 35 U.S.C. § 112 ¶ 1 at least because the '851 Patent fails to provide a written description that conveys with reasonable clarity to those skilled in the art that, as of the filing date sought, the inventors of the '851 Patent were in possession of the invention, and it fails to enable any person reasonably skilled in the art to make and use the alleged invention claimed therein.

21.     One or more of the claims of the '851 Patent is invalid as indefinite under 35 U.S.C. § 112 ¶ 2 for failing to particularly point out and distinctly claim the subject matter of the invention claimed therein.

## Third Defense
### (Inequitable Conduct)

22.     On information and belief, individuals subject to the duty of candor under 37 C.F.R. § 1.56, including at least two of the named inventors of the '851 Patent, John S. Hendricks and Michael L. Asmussen, and other persons with substantive involvement in the filing and/or prosecution of the application that resulted in the '851 Patent (the "'851 Application") (collectively, "Applicants"), engaged in inequitable conduct by engaging in a pattern and practice of withholding material information with the intent to deceive the United States Patent and Trademark Office ("the PTO") in connection with the prosecution of the '851 Patent.

23.     On information and belief, Applicants withheld numerous material prior art references – including their own issued patents that comprised material prior art, material prior art that was known to them through the prosecution of their own patents and applications, and material information regarding their own co-pending applications for patents on related subject matter, including office actions and responses. In addition to the material prior art references and co-pending applications that improperly were never disclosed, Applicants effectively

withheld numerous other prior art references by listing the references in a defective information disclosure statement ("IDS") filed more than five years into the prosecution (and long after Applicants were aware of the prior art) that contained more than 600 prior art references, and that was never considered by the examiner. On information and belief, Applicants withheld at least the foregoing prior art and other material information with the intent to deceive the PTO.

24.     On information and belief, Applicants were aware of this withheld material information at least because (1) the co-pending applications shared an inventor, John S. Hendricks, with the '851 Patent, and many of the co-pending applications were assigned to Discovery during their prosecution; (2) the material prior art was cited in the prosecution of related patents; and/or (3) John S. Hendricks was one of the named inventors of the withheld prior art.

25.     The withheld prior art was material at least because it disclosed elements of the purported invention as described by Applicants, including elements added in amendments made during the prosecution of the '851 Patent.

26.     For example, many of these material prior art references related to electronic books. The '851 Patent is entitled "Electronic Book Security and Copyright Protection System" and Discovery, in its Complaint, accuses Amazon of infringing the '851 Patent by, *inter alia*, selling electronic books.

27.     As merely one example of withheld material prior art relating to electronic books, on information and belief, Applicants withheld, with the intent to deceive, U.S. Patent No. 5,956,034 to Sachs et al. (the "'034 Patent") ("Method and Apparatus for Viewing Electronic Reading Materials"). Applicants were aware of the '034 Patent and its materiality to electronic book patents at least because Applicants disclosed it in a supplemental IDS dated October 11,

2007 filed in the prosecutions of multiple co-pending applications, including without limitation, U.S. Application No. 09/722,519, now issued as U.S. Patent No. 7,336,788 (the "'788 Patent") ("Electronic Book Secure Communication with Home Subsystem"), co-pending U.S. Application No. 09/441,892, now issued as U.S. Patent No. 7,509,270 (the "'270 Patent") ("Electronic Book Having Electronic Commerce Features"), and co-pending U.S. Application No. 09/237,827 (the "'827 Application") ("Electronic Book Having Library Catalog Having Menu and Searching Features"). Applicants submitted a supplemental IDS in the prosecution of the '851 Patent on September 24, 2007, but it did not identify the '034 Patent. The examiner notified Applicants on October 19, 2007 that he had considered the references contained on that IDS, but Applicants did not submit any additional references to the PTO prior to receiving the Issue Notification.

28.     In addition, during prosecution of the '851 Patent, all of the original claims were rejected by the examiner as being unpatentable over the prior art, which, as the examiner explained, already disclosed all elements of the claims being sought.

29.     After multiple attempts by Mr. Hendricks, Mr. Asmussen, and the other Applicants to change the examiner's mind, the examiner ultimately issued a final rejection on December 30, 2005, rejecting all of Applicants' pending claims as being unpatentable over the prior art of record.

30.     Subsequently, Mr. Hendricks, Mr. Asmussen, and the other Applicants filed a request for continued prosecution of the '851 Patent and, in an amendment dated May 1, 2006 (the "May 1st Amendment"), amended all claims of the '851 Patent to include the limitations (or minor variations thereof) of: (1) "creating a list of titles of available electronic books;" (2) "transmitting the list of titles of available electronic books;" (3) "selecting a title from the

6

transmitted list of titles;" and (4) "communicating the selected title to an electronic book source." According to Applicants, the claims were allowable over the prior art because of these modifications.

31.    Following the May 1st Amendment, the examiner indicated in an office action dated August 10, 2006 that the pending claims were directed to allowable subject matter.

32.    Mr. Hendricks, Mr. Asmussen, and the other Applicants thus were aware that the examiner, having rejected all of the pending claims *without* the additional limitations, but allowed them *with* the additional limitations, clearly viewed the additional limitations relating to creating and transmitting lists of titles of available electronic books, selecting titles from those lists, and communicating the selection of titles from those lists as (1) material to the patentability of the claims of the '851 Patent and (2) absent from the prior art of record.

33.    Mr. Hendricks, Mr. Asmussen, and the other Applicants withheld or effectively withheld, however, material prior art disclosing the very elements whose addition to the claims of the '851 Patent convinced the examiner to allow those claims.

34.    As one example, Applicants effectively withheld[1] from the examiner U.S. Patent No. 5,506,902 to Kubota (the "'902 Patent") ("Data Broadcasting System"), a prior art reference that was highly material to the patentability of the '851 patent.

35.    At least two of the named inventors of the '851 Patent, Mr. Hendricks and Mr. Asmussen, were indisputably aware of the '902 Patent because it was cited in at least one co-pending patent application, of which they were also inventors, relating to similar subject matter. For example, in the co-pending prosecution of the '827 Application ("Electronic Book Having

---

[1] *See, e.g., infra* ¶¶ 44 – 48 for discussion of Applicants' effective withholding of numerous prior art references.

Library Catalog Having Menu and Searching Features"), the '902 Patent had been a ground for rejection of similar claims over the course of roughly two years while the '851 Patent was still pending.

36.     The claim limitations in the '827 Application for which the '902 Patent was cited were substantially similar to the claim limitations Applicants added in their May 1st Amendment to the '851 Patent.  For example, as of the amendment and response dated July 26, 2005, Claim 1 of the '827 Application claimed a system comprising, *inter alia*, "means, connected to the connector, for *selecting a portion of the textual data*, comprising *means for receiving a subscriber entry indicating a title of an electronic book, wherein the title correlates to a portion of the textual data*; and a display, connected to the connector, that displays a *particular library menu relating to the textual data* and *based upon a subscriber-entered selection*." (Emphases added).

37.     In an office action dated October 19, 2005, the examiner of the '827 Application cited the '902 Patent as a ground for rejecting pending Claim 1 and all other pending claims. The examiner explained that the '902 Patent disclosed, *inter alia*, "receiving textual data and allowing a user to view the textual data and select and view electronic books therefrom (see Column 2, Lines 31-46 and Column 9, Lines 1-9 and Figure 12)."

38.     Subsequently, in the prosecution of the '827 Application, the examiner, in an August 2, 2006 office action, further noted to Mr. Hendricks and Mr. Asmussen that "Kubota [the '902 Patent], discloses a library (see recorder 7 in Figure 14) that stores an electronic collection of electronic books (see Column 9, Lines 15-28) and a menu generator that determines whether to generate a menu of the books located in the collection based on a subscriber's entry

8

and a default menu (see Column 9, Lines 1-9 and Column 10, Lines 1-9 for instructing the system to display an initial page which displays a list of potential books …).”

39.     Thus, as of no later than October 19, 2005, Mr. Hendricks and Mr. Asmussen were aware not only that the '902 Patent existed, but also that it disclosed subject matter directed to the very claim limitations added by them and the other Applicants during prosecution of the '851 Patent that the examiner of the '851 Patent believed to be both material to patentability and absent from the prior art of record.  Indeed, as is clear from the examiner's comments, for example in office actions in the prosecution of the '827 Application dated October 19, 2005 and August 2, 2006, the '902 Patent discloses, *inter alia*, an electronic book system with menu generation, which allows a user to select and view electronic books.

40.     Through the prosecution of the '827 Application, which was co-pending with and continued after the prosecution of the '851 Patent, Mr. Hendricks and Mr. Asmussen modified, and to this day continue to modify, the claim limitations for their alleged invention to overcome the '902 Patent.  Yet, none of these office actions or responses, which issued or were submitted while Mr. Hendricks and Mr. Asmussen were concurrently amending claim limitations of the '851 Patent, were disclosed in the prosecution of the '851 Patent.  The analysis of the examiner in the office actions of the '827 Application discussing the '902 Patent would clearly have been of interest to the examiner in the prosecution of the '851 Patent, as they related to substantially similar claims, material to the patentability of the '851 Patent.

41.     As another example of the withheld material prior art relating to title list creation, selection and transmission, Applicants failed to disclose U.S. Patent No. 5,734,853 to Hendricks et al. (the "'853 Patent") ("Set-top Terminal for Cable Television Delivery Systems").  Applicants were aware of the '853 Patent – John S. Hendricks, one of the named inventors of the

'851 Patent, is also one of the named inventors on the '853 Patent.  In addition, the '853 Patent was disclosed during the prosecution of co-pending U.S. Application No. 09/556,875, now issued as U.S. Patent No. 7,134,131 (the "'131 Patent") ("Digital Broadcast Program Billing").

42.    As another example of material prior art relating to title list creation, selection and transmission, Applicants further withheld U.S. Patent No. 5,629,733 to Youman et al. (the "'733 Patent") ("Electronic Television Program Guide Schedule System and Method with Display and Search of Program Listings by Title").  Applicants knew of the '733 Patent at least by March 18, 2003, when Applicants disclosed it in an IDS filed in the co-pending prosecutions of the '131 Patent, U.S. Patent No. 7,363,645 (the "'645 Patent") ("Interactive Electronic Program Guide for Use with Television Delivery System") and U.S. Patent No. 7,073,187 ("Menu-driven Television Program Access System and Method").

43.    On information and belief, Applicants also withheld, with the intent to deceive, material non-patent publications relating to electronic books and methods of encryption, including without limitation, Basch et al., "Books Online: Visions, Plans, and Perspectives for Electronic Text," Online. Medford, vol. 15, Iss. 4; 13 (July 1991); Pobiak, "Adjustable access electronic books," Computing Applications to Assist Persons with Disabilities, 1992, Proceedings of the Johns Hopkins National Search for Feb. 1-5, 1992 pp. 90-94 (February 1992); and Rausch, "Enabling the Book Metaphor for the World-Wide-Web: Disseminating On-Line Information as Dynamic Web Documents," IEEE Transactions on Professional Communications. IEEE, USA, vol. 40, No. 2, pp. 111-128 (June 1997).  These publications were known to one or more Applicants at least because these publications were disclosed in the co-pending applications of the '788 Patent ("Electronic Book Secure Communication with Home Subsystem") and the '270 Patent ("Electronic Book Having Electronic Commerce Features").

44.     In addition to the above examples, Applicants, including Mr. Hendricks and Mr. Asmussen, effectively withheld numerous material prior art references by identifying them in such a manner as to preclude consideration of the references.  For example, when the examiner indicated in an August 10, 2006 office action that the pending claims of the '851 Patent were directed to allowable subject matter, Mr. Hendricks, Mr. Asmussen, and the other Applicants flooded the examiner with a 13-page IDS on January 26, 2007 (the "January 26 IDS").  The January 26 IDS contained a total of 608 references, including numerous material references of which Applicants had been aware for months – and in some instances for several years – before filing this IDS at least because the references were disclosed during the prosecutions of co-pending applications.  The examiner notified the Applicants of various deficiencies in the IDS and explicitly stated that, given those deficiencies, the January 26 IDS was not considered.  Despite this notice, and the fact that the references in the defective January 26 IDS were not disclosed to the PTO in a manner in which they could be considered, Applicants never filed a replacement IDS or otherwise cured the deficiencies in the January 26 IDS or otherwise ever disclosed hundreds of prior art references listed in the January IDS, many of which Applicants knew to be material, including the '902 Patent which at least Mr. Hendricks and Mr. Asmussen knew to be material.[2]  Mr. Hendricks, Mr. Asmussen, and the Applicants, through their failure to address the deficiencies cited by the examiner and place the January 26 IDS back before the examiner or otherwise disclose the references, on information and belief, sought to avoid consideration of the prior art listed on the January 26 IDS, including for example, the '902 Patent, and did so with the intent to deceive the PTO.

---

[2]  See discussion, *supra*, at ¶¶ 34 – 40.

45.    Applicants' conduct following the submission of the January 26 IDS provides
further evidence of Applicants' intent to deceive the PTO.  Applicants submitted two subsequent
information disclosure statements on March 13, 2007 and March 16, 2007, containing a total of
20 references, none of which were cited in the January 26 IDS or in any other IDS submitted
prior to January 26, 2007.  A Notice of Allowance issued on April 10, 2007, which explicitly
stated that the examiner had not considered the references contained in the defective January 26
IDS.

46.    On May 4, 2007, Applicants requested an acknowledgment of receipt for the
information disclosure statements filed March 13, 2007 and March 16, 2007.  Applicants,
however, did not request an acknowledgment of receipt for the defective January 26 IDS or
replace the defective January 26 IDS with one in compliance with 37 C.F.R. § 1.98(a)(2); nor did
Applicants otherwise disclose prior art references in the defective January 26 IDS.  The examiner
filed a response on June 8, 2007 initialing all of the references contained on the March 13, 2007
IDS and the March 16, 2007 IDS.  The January 26 IDS remained unconsidered.

47.    Applicants then submitted two more information disclosure statements on July 19,
2007 and August 1, 2007, which were considered by the examiner as of August 28, 2007.  Yet
the January 26 IDS remained unconsidered, and prior art contained therein remained
undisclosed.  Even when the PTO issued a second Notice of Allowance on August 28, 2007,
Applicants still had not replaced the January 26 IDS or disclosed the prior art contained therein.
Instead, Applicants submitted a third IDS on September 24, 2007, which was considered by the
examiner as of October 11, 2007.  The Issue Notification was filed on October 31, 2007.  And
still, the January 26 IDS – and prior art contained therein – was not considered.

48.     Material prior art relating to electronic books that was listed in the defective January 26 IDS but effectively withheld by Applicants includes without limitation, the '725 Patent ("Microprocessor Based Simulated Book"); the '902 Patent ("Data Broadcasting System"); U.S. Patent No. 5,089,956 to MacPhail (the "'956 Patent") ("Method of Distributing Related Documents to Identified End Users in an Information Processing System"); U.S. Patent No. 5,761,485 to Munyan (the "'485 Patent") ("Personal Electronic Book System"); U.S. Patent No. 5,239,665 to Tsuchiya (the "'665 Patent") ("Electronic Book Having Several Keys for Changing Pages and Underlining Certain Portions of Text"); U.S. Patent No. 5,475,399 to Borsuk (the "'399 Patent") ("Portable Hand-Held Reading Unit With Reading Aid Feature"); U.S. Patent No. 5,093,718 to Hoarty et al. (the "'718 Patent") ("Interactive Home Information System"); and U.S. Patent No. 6,331,867 to Eberhard et al. (the "'867 Patent") ("Electronic Book with Automated Look-up of Terms of Within Reference Titles").

49.     On information and belief, Applicants also withheld, with the intent to deceive, numerous material prior art references relating to list creation, selection and transmission, including without limitation, U.S. Patent No. 5,404,393 to Remillard (the "'393 Patent") ("Method and Apparatus for Interactive Television Through Use of Menu Windows").

50.     On information and belief, Applicants further withheld, with the intent to deceive, material prior art relevant to encryption and decryption, including without limitation, U.S. Patent No. 5,509,074 to Choudhury et al. (the "'074 Patent") ("Method of Protecting Electronically Published Materials Using Cryptographic Protocols"); U.S. Patent No. 6,331,865 to Sachs et al. (the "'865 Patent") ("Method and Apparatus for Electronically Distributing and Viewing Digital Contents"); and U.S. Patent No. 5,237,610 to Gammie et al. (the "'610 Patent") ("Independent External Security Module for a Digitally Upgradeable Television Signal Decoder").

51.     Applicants were aware of these prior art references and their materiality well before they submitted the January 26 IDS, at least because they were cited or discussed during the prosecutions of co-pending applications relating to electronic books, title list creation, selection and transmission, or encryption.  Furthermore, not only were the material prior art references improperly withheld, but many office actions in which these references were discussed should have been disclosed in connection with the '851 Application but never were.

52.     For example, the '725 Patent ("Microprocessor Based Simulated Book") was known to Applicants at least on March 22, 2005, when it was cited as grounds for rejection in an office action during the co-pending prosecution of the '501 Patent ("Electronic Book Selection and Delivery System Having Encryption and Security Features").  In addition, the analysis of the examiner in the March 22, 2005 office action demonstrated that the '725 Patent, which "teaches a method for restricting access to electronic books displayed on a viewer," was material to the patentability of the '851 Patent.  Further, the examiner's analysis of the '725 Patent in the March 22, 2005 office action, and in subsequent office actions discussing the '725 Patent as a ground for rejecting claims of the '501 Patent, was material and should have been disclosed.

53.     As another example, the '074 Patent ("Method of Protecting Electronically Published Materials Using Cryptographic Protocols") and the '956 Patent ("Method of Distributing Related Documents to Identified End Users in an Information Processing System") were known to Applicants at least as of August 10, 2004, when they were cited in an office action during the co-pending prosecution of the '788 Patent ("Electronic Book Secure Communication with Home Subsystem").  The references were cited as grounds for both § 102 and § 103 rejections of claims directed to the communication of electronic books between a library and a viewer with encryption.  Both references continued to be cited as grounds for

rejection in subsequent office actions, even as Applicants modified the language of the claims. Furthermore, not only were the references material, but the August 10, 2004 office action itself, as well as the subsequent office actions and Applicants' responses thereto that discuss these references, were material and were not disclosed.

54.     In addition, Applicants were aware of the '485 Patent ("Personal Electronic Book System") and its materiality at least because it was grounds for rejection of claims in the co-pending prosecution of U.S. Patent No. 7,401,286 (the "'286 Patent") ("Electronic Book Electronic Links"). Specifically, the examiner cited the '485 Patent in a March 5, 2007 non-final rejection as grounds for rejecting claims directed to purchasing books through an electronic book viewer that are "located at a distant repository and that are transmitted to the viewer over a telecommunications system" because the '485 Patent teaches a system that "comprises an online bookstore through which users may purchase and download electronic books." Moreover, in their response to this office action, Applicants admit that the '485 Patent "teaches a system for ordering and transmitting electronic books." Thus, the '485 Patent was material, and the March 5 Office Action and Applicants' response were as well, and they were improperly withheld.

55.     Applicants were also aware of the '867 Patent ("Electronic Book with Automated Look-up of Terms of Within Reference Titles") at least from the prosecution of the '286 Patent, which served as the basis for a § 103 rejection of the same claims in a later office action. As with the '485 Patent, not only did Applicants have a duty to disclose the material prior art reference and the '867 Patent, but the Office Action was material and should have been disclosed as well.

15

56.     As another example, Applicants were aware of the '655 Patent ("Electronic Book Having Several Keys for Changing Pages and Underlining Certain Portions of Text") and the '399 Patent ("Portable Hand Held Reading Unit with Reading Aid Feature") in a non-final rejection of all claims in the co-pending prosecution of the '827 Application ("Electronic Book Having Library Catalog Having Menu and Searching Features") dated January 26, 2005. From that same prosecution, Applicants were aware of other material references, including, without limitation, the '718 Patent ("Interactive Home Information System") and the '902 Patent ("Data Broadcasting System"), which served as the grounds for multiple § 103 rejections in an office action on October 19, 2005. The analysis of these references in these office actions was itself material and should have been disclosed in the prosecution of the '851 Patent as well.

57.     As another example, Applicants were aware of the '393 Patent ("Method and Apparatus for Interactive Television Through Use of Menu Windows") and its materiality at least by August 15, 2002 when Applicants identified the '393 Patent in an IDS filed during the co-pending prosecution of U.S. Patent No. 7,363,645 (the "'645 Patent") ("Interactive Electronic Program Guide for use with Television Delivery System"). The examiner in the '645 prosecution later cited the '393 Patent as grounds for a § 103 rejection in an office action dated May 16, 2006. In addition, the examiner's analysis of the '393 Patent also was material to the prosecution of the '851 Patent and yet was not disclosed.

58.     Applicants also were aware of the '610 Patent ("Independent External Security Module for a Digitally Upgradeable Television Signal Decoder") and the '865 Patent ("Method and Apparatus for Electronically Distributing and Viewing Digital Contents"), which are directed toward methods of encryption and decryption, at least from the co-pending prosecutions of the '788 Patent and the '270 Patent. Yet these material references were not disclosed.

59.     Applicants similarly failed to disclose material and related co-pending applications to the PTO during the prosecution of the '851 Patent in violation of their obligations.

60.     During the time the '851 Patent was before the PTO, Applicants had at least four co-pending applications relating to electronic books that it did not disclose, including without limitation, U.S. Application No. 09/964,882, now issued as the '501 Patent ("Electronic Book Selection and Delivery System Having Encryption and Security Features"); U.S. Application No. 09/722,519, now issued as the '788 Patent ("Electronic Book Secure Communication with Home Subsystem"); U.S. Application No. 09/441,892, now issued as the '270 Patent ("Electronic Book Having Electronic Commerce Features"); and U.S. Application No. 09/237,825 (the "'825 Application") ("Electronic Book Selection and Delivery System"), now abandoned.

61.     In addition, Applicants were aware of, but failed to disclose, co-pending applications directed to the title list generation, selection and transmission steps, including without limitation co-pending U.S. Application No. 09/556,875, now issued as U.S. Patent No. 7,134,131 (the "'131 Patent") ("Digital Broadcast Program Billing"); U.S. Application No. 09/964,890, now issued as U.S. Patent No. 7,363,645 (the "'645 Patent") ("Interactive Electronic Program Guide for Use with Television Delivery System"); U.S. Application No. 09/208,097, now issued as U.S. Patent No. 7,073,187 (the "'187 Patent") ("Menu-Driven Television Program Access System and Method"); and U.S. Application No. 10/295,922 (the "'922 Application") ("Reprogrammable Set Top Terminal that Stores Programs Locally and Generates Menus") (final rejection mailed March 4, 2009).  One or more of Applicants was aware of these co-pending applications, at least because of the fact that John S. Hendricks, the first named inventor on the '851 Patent, is also a named inventor on these applications.  Discovery became the

assignee of all of these applications during their respective prosecutions, and on information and belief, Discovery employees who were substantively involved in the prosecution of the '851 Patent were also aware of the prosecutions of these patents.

62.     Based on the foregoing, on information and belief, Applicants withheld, with the intent to deceive, their own issued patents that comprised material prior art, material prior art that was known to them through the prosecution of their own patents and applications, and material information regarding their own co-pending applications for patents on related subject matter, including office actions and responses.

## COUNTERCLAIMS

63.     Counterclaimant Amazon, by and through its attorneys, asserts the following Counterclaims against Counterdefendant Discovery.

64.     Amazon is a corporation duly organized and existing under the laws of Delaware and has its principal place of business at 1200 Twelfth Avenue South, Seattle, Washington. Since its launch in 1995, Amazon has been a pioneer in the field of electronic commerce ("ecommerce"). Amazon's creative technological solutions in this field have resulted in the PTO's issuing dozens of patents to Amazon for its innovations. These patents relate to, *inter alia*, Amazon's novel contributions to the fundamental technology underlying ecommerce.

65.     On information and belief, Discovery is a Delaware corporation with its principal place of business at Silver Spring, Maryland.

66.     These Counterclaims arise under federal law, and this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, 1367, 2201, and 2202, and the Patent Laws of the United States, 35 U.S.C. § 1 et seq.

67.     This Court has personal jurisdiction over Discovery at least because it has submitted to the jurisdiction of this Court.

68.    Venue is proper under 28 U.S.C. §§ 1391 and 1400(b).

**First Counterclaim**
**(Infringement of U.S. Patent No. 6,029,141)**

69.    Amazon re-alleges and incorporates by reference each allegation contained in Paragraphs 63 – 68, inclusive, as if fully set forth herein.

70.    On February 2, 2000, United States Patent No. 6,029,141 (the "'141 Patent") entitled "Internet-Based Customer Referral System" was duly and legally issued to Amazon by the PTO.  Amazon is the owner of the entire right, title, and interest in and to the '141 Patent.  A true and correct copy of the '141 Patent is attached as Exhibit A to this Amended Answer.

71.    Discovery has infringed, and is infringing, one or more claims of the '141 Patent, both directly and indirectly, literally, and/or under the doctrine of equivalents.

72.    Discovery owns, operates, provides, receives revenue from, and/or is otherwise affiliated with an online store that is accessible at at least http://store.discovery.com ("the Discovery Store website") that sells products related to, for example, the Discovery Channel, The Learning Channel, Animal Planet, the Military Channel, and the Science Channel.

73.    Discovery's infringing activities in the United States and this District include, without limitation, providing an on-line store that sells consumer products and providing an "Affiliates Program" that allows a non-Discovery website to advertise and link to products at the Discovery Store website to earn commissions.

74.    Discovery's infringing activities violate 35 U.S.C. § 271.

75.    Discovery's infringement of the '141 Patent has been and is willful.

76.    As a direct and proximate consequence of Discovery's infringement and willful infringement of the '141 Patent, Amazon has suffered and will continue to suffer irreparable injury and damages.

**Second Counterclaim**
**(Infringement of U.S. Patent No. 7,337,133)**

77.     Amazon re-alleges and incorporates by reference each allegation contained in Paragraphs 63 – 68, inclusive, as if fully set forth herein.

78.     On February 26, 2000, United States Patent No. 7,337,133 (the "'133 Patent") entitled "Internet-Based Customer Referral System" was duly and legally issued to Amazon by the PTO.  Amazon is the owner of the entire right, title, and interest in and to the '133 Patent.  A true and correct copy of the '133 Patent is attached as Exhibit B to this Amended Answer.

79.     Discovery has infringed, and is infringing, one or more claims of the '133 Patent, both directly and indirectly, literally, and/or under the doctrine of equivalents.

80.     Discovery owns, operates, provides, receives revenue from, and/or is otherwise affiliated with an online store that is accessible at at least http://store.discovery.com ("the Discovery Store website") that sells products related to, for example, the Discovery Channel, The Learning Channel, Animal Planet, the Military Channel, and the Science Channel.

81.     Discovery's infringing activities in the United States and this District include, without limitation, providing an on-line store that sells consumer products and providing an "Affiliates Program" that allows a non-Discovery website to advertise and link to products at the Discovery Store website to earn commissions.

82.     Discovery's infringing activities violate 35 U.S.C. § 271.

83.     Discovery's infringement of the '133 Patent has been and is willful.

84.     As a direct and proximate consequence of Discovery's infringement and willful infringement of the '133 Patent, Amazon has suffered and will continue to suffer irreparable injury and damages.

### Third Counterclaim
### (Declaratory Relief Regarding the '851 Patent)

85.    Amazon re-alleges and incorporates by reference each allegation contained in

Paragraphs 63 – 68, inclusive, as if fully set forth herein.

86.    On or about October 2, 2008, Discovery sent Amazon a letter (the "October 2

Letter") asserting that Amazon was "making, using, selling, offering for sale and/or importing

products that require a license under one or more of the patents in our E-book Patent Portfolio,

such as Amazon Kindle, associated software and services, and content of e-books." The October

2 Letter identified the following United States patents as being part of Discovery's so-called "E-

book Patent Portfolio": 5,986,690; 6,557,173; 7,298,851; 7,299,501; 7,336,788; and 7,401,286.

A true and correct copy of the October 2 Letter is attached as Exhibit C to this Amended

Answer.

87.    In subsequent communications, Discovery reiterated its allegation that certain

Discovery patents covered Amazon's products and/or services, and that Amazon was required to

take a license to the Discovery patents.

88.    On or about March 17, 2009, Discovery filed its Complaint for Patent

Infringement naming Amazon as Defendant and alleging that: "Amazon has infringed and

continues to infringe; has induced and continues to induce others to infringe; and/or has

committed and continues to commit acts of contributory infringement, literally or under the

doctrine of equivalents, of one or more claims of the '851 patent." Discovery further alleged

that: "Amazon's infringing activities in the United States and this District include the

manufacture, use, importation, sale, and/or offer for sale of products, including but not limited to

the Kindle and Kindle 2, and the inducement of others to do the same" and "the operation of the

Amazon.com website and the provision of services related to the Kindle and Kindle 2 through and by that website, including but not limited to the sale of electronic books."

89.     As set forth below, Amazon has not infringed and does not infringe any of the patents that Discovery identified and concerning which Discovery claims Amazon is required to take a license, including through activities related to its Kindle, Kindle 2, and Kindle DX products.

90.     On or about November 20, 2007, United States Patent No. 7,298,851 (the "'851 Patent"), entitled "Electronic Book Security and Copyright Protection System" issued to named inventors John S. Hendricks, Michael L. Asmussen, and John S. McCoskey. The face of the patent states that the '851 Patent is assigned to Discovery.

91.     Amazon has not infringed and is not infringing the '851 Patent, willfully or otherwise, directly or indirectly, either literally or by application of the doctrine of equivalents.

92.     The '851 Patent is invalid and/or unenforceable for failure to meet one or more of the conditions of patentability and/or patent eligibility specified in Title 35 of the United States Code, including, without limitation, sections 101, 102, 103, and/or 112, as set forth in Paragraphs 16 – 21.

93.     The '851 Patent is unenforceable due to inequitable conduct perpetrated on the PTO during its prosecution, as set forth in Paragraphs 22 – 62 herein.

94.     Pursuant to 28 U.S.C. § 2201(a), an actual and justiciable controversy has arisen and exists between Amazon and Discovery. Amazon is entitled to a judicial determination and declaration that it has not infringed and is not infringing the '851 Patent and that the '851 Patent is invalid and unenforceable.

**Fourth Counterclaim**
**(Declaratory Relief Regarding the '690 Patent)**

95.      Amazon re-alleges and incorporates by reference each allegation contained in

Paragraphs 63 – 68, and 86 – 89, inclusive, as if fully set forth herein.

96.      On or about November 16, 1999, United States Patent No. 5,986,690 (the "'690

Patent"), entitled "Electronic Book Selection and Delivery Service," issued to named inventor

John S. Hendricks.  The face of the patent states that the '690 Patent is assigned to Discovery.  A

true and correct copy of the '690 Patent is attached as Exhibit D to this Amended Answer.

97.      Amazon has not infringed and is not infringing the '690 Patent, willfully or

otherwise, directly or indirectly, either literally or by application of the doctrine of equivalents.

98.      The '690 Patent is invalid and/or unenforceable for failure to meet one or more of

the conditions of patentability and/or patent eligibility specified in Title 35 of the United States

Code, including, without limitation, sections 101, 102, 103, and/or 112 for any one or more of

the reasons set forth herein.

99.      One or more of the claims of the '690 Patent is unpatentable under 35 U.S.C.

§ 101 at least because the claims fail to satisfy the conditions and requirements for patentability

under Title 35 of the United States Code, and are not directed to a new and useful process,

machine, manufacture, or composition of matter, or any new and useful improvements thereof.

100.     The '690 Patent recites a filing date of November 7, 1994.

101.     U.S. Patent No. 4,517,598 to Van Valkenburg et al. (the "'598 Patent") ("Method

and Apparatus for Electronic Publishing") was filed on October 22, 1982 and issued May 14,

1985, both before the filing date of the '690 Patent.  The '598 Patent, according to its abstract,

"provides apparatus and methods for formatting and displaying video information having

particular application to electronic publishing systems."  The '598 Patent is one example of a

prior art reference that, alone or in combination with other references, renders claims of the '690 Patent invalid under 35 U.S.C. §§ 102 and/or 103.

102.    One or more of the claims of the '690 Patent is invalid under 35 U.S.C. § 112 ¶ 1 at least because the '690 Patent fails to provide a written description that conveys with reasonable clarity to those skilled in the art that, as of the filing date sought, the inventor of the '690 Patent was in possession of the invention, and it fails to enable any person reasonably skilled in the art to make and use the alleged invention claimed therein.

103.    One or more of the claims of the '690 Patent is invalid as indefinite under 35 U.S.C. § 112 ¶ 2 for failing to particularly point out and distinctly claim the subject matter of the invention claimed therein.

104.    One or more of the claims of the '690 Patent is invalid under 35 U.S.C. § 112 ¶ 6 at least because the '690 Patent fails to disclose the structure, material, or acts that perform the claimed function.

105.    On information and belief, individuals subject to the duty of candor under 37 C.F.R. § 1.56, including the named inventor of the '690 Patent, John S. Hendricks, and other persons with substantive involvement in the filing and/or prosecution of the application that resulted in the '690 Patent (collectively, "'690 Applicants"), engaged in inequitable conduct by engaging in a pattern and practice of withholding material information with the intent to deceive the United States Patent and Trademark Office ("the PTO") in connection with the prosecution of the '690 Patent.

106.    During prosecution of the '690 Patent, over half of the original claims, including Claim 1, were rejected multiple times by the examiner as being unpatentable over the prior art,

which, as the examiner explained, already disclosed all of the elements of the claims being sought.

107.   On July 23, 1997, the examiner rejected several of the independent claims, including Claim 1 and Claim 25, as being unpatentable over the prior art of record.

108.   To overcome those rejections, Mr. Hendricks and the other '690 Applicants filed a response dated January 26, 1998 (the "January 26th Amendment"), amending Claim 1 to include the limitations of creating a means for selecting and transmitting *textual* data, and for producing a composite signal using *textual* data *and menu* data.  Moreover, the amended claim specified a means for selecting textual data *using the menu data and at least one submenu*. Similar limitations were also added to the other rejected independent claim, Claim 25.  Counting all the claims depending from Claims 1 and 25, the limitations were added to an additional ten claims.  According to Mr. Hendricks and the other '690 Applicants, the newly amended claims were allowable over the prior art because the prior art did not disclose a means for producing a composite signal involving menu data and the extraction of textual data from a video signal.

109.   Following the January 26th Amendment, the examiner indicated that the claims were allowable over the prior art, and ultimately issued a notice of allowability for the claims incorporating the amendments.

110.   Mr. Hendricks and the other '690 Applicants thus were aware that the examiner, having rejected the claims *without* the additional elements but allowed them *with* the additional elements, clearly viewed the additional limitations as (1) material to the patentability of the claims of the '690 Patent and (2) absent from the prior art of record.

111.   However, neither Mr. Hendricks nor the other '690 Applicants disclosed to the examiner the existence of other uncited prior art, of which they were aware, that disclosed the

very elements whose addition to the claims of the '690 Patent convinced the examiner to allow those claims.

112.    As one example, Mr. Hendricks and the other '690 Applicants withheld from the examiner a prior art reference, U.S. Patent No. 5,561,708 to Remillard ("'708 Patent") ("Method and Apparatus for Interactive Television Through Use of Menu Windows") that was highly material to the patentability of the '690 Patent.

113.    The '708 Patent abstract describes the invention as being directed to the use of a menu display to select from available electronic facilities providing textual data including "printing, electronic mail, and other news and information services." The title of the patent itself, "Method and Apparatus for Interactive Television Through Use of Menu Windows," signals its relevance to the provision of textual and menu data and their combination over some form of television-compatible transmission, and thus its relevance to the claim limitations added in the January 26th Amendment. Additionally, the '708 Patent abstract teaches the use of a menu system to make selections from facilities, and to perform functions such as the selection of graphic or textual data. Notably, the '708 Patent consists of only 11 pages, including only 4 of written text, and only two claims, both of which pertain to the menu system. Thus, any person familiar with the '708 Patent would have also been aware of its subject matter, and would therefore have known that it pertained to the claim limitations added to the '690 Patent in the January 26th Amendment.

114.    Mr. Hendricks and the other '690 Applicants were indisputably aware of the '708 Patent because it was disclosed in at least four co-pending patent applications filed by Mr. Hendricks, relating to similar subject matter. For example, it was disclosed in U.S. Application No. 08/160,194 (the "'194 Application") ("Advanced Set Top Terminal For Cable Television

26

Delivery Systems") on December 2, 1998, U.S. Application No. 08/912,934 (the "'934 Application") ("An Operations Center for a Television Program Packaging and Delivery System") on December 2, 1998, U.S. Application No. 09/054,419 (the "'419 Application") ("Targeted Advertisement Using Television Delivery Systems") on February 18, 1999, and U.S. Application No. 09/157,574 (the "'574 Application") ("Card for a Set Top Terminal") on December 2, 1998, all before the '690 Patent finally issued.  Furthermore, Mr. Hendricks and the other '690 Applicants, having prosecuted numerous patent applications in the same technology area, were very familiar with the subject area of the '708 Patent.  Thus, on information and belief, Mr. Hendricks and the other '690 Applicants were not only aware of but also well familiar with the contents and disclosure of the '708 Patent.  However, neither Mr. Hendricks nor any of the other '690 Applicants disclosed the '708 Patent to the examiner in the '690 prosecution history.

115.    In light of the foregoing, on information and belief, the '690 Applicants, including the inventor, Mr. Hendricks, were aware not only that the '708 Patent existed, but also that it disclosed subject matter material to the very limitations added by Mr. Hendricks and the other '690 Applicants during prosecution of the '690 Patent that the examiner believed to be both material to patentability and absent from the prior art of record.  On information and belief, therefore, Mr. Hendricks and the other '690 Applicants failed to disclose the '708 Patent with the intent to deceive the examiner.

116.    As another example, Mr. Hendricks and the other '690 Applicants withheld from the examiner a prior art reference, U.S. Patent No. 5,404,505 to Levinson ("'505 Patent") ("System for Scheduling Transmission of Indexed and Requested Database Tiers On Demand at Varying Repetition Rates"), that was highly material to the patentability of the '690 Patent.

117.    The '505 Patent teaches the transmission of a large amount of textual and other data as part of a database searchable through a hierarchical set of indices that are transmitted along with the data for the purpose of referencing the available data.  The abstract of the '505 Patent discloses a system whereby information in the database is tagged with index information so as to provide the subscriber with means to access the content of the database.  Notably, the '505 Patent consists of only 25 pages, including only 18 pages of written text.  Moreover, *all* claims of the '505 Patent include limitations directed to the means or method for generating such index information.

118.    Mr. Hendricks and the other '690 Applicants were indisputably aware of the '505 Patent because it was disclosed in at least four co-pending patent applications that were filed by Mr. Hendricks, and relating to similar subject matter.  For example, the '505 Patent was disclosed in the '194 Application ("Advanced Set Top Terminal For Cable Television Delivery Systems") on December 2, 1998, the '934 Application ("An Operations Center for a Television Program Packaging and Delivery System") on December 2, 1998, the '419 Application ("Targeted Advertisement Using Television Delivery Systems") on February 18, 1999, and the '574 Application ("Card for a Set Top Terminal") on December 2, 1998.  Thus, on information and belief, not only were Mr. Hendricks and the other '690 Applicants aware of the '505 Patent but also well familiar with its contents and disclosure.  However, neither Mr. Hendricks nor the other '690 Applicants disclosed the '505 Patent in the prosecution of the '690 Patent, even though the '690 Patent did not issue until November 16, 1999.

119.    In light of the foregoing, on information and belief, the '690 Applicants, including the inventor, Mr. Hendricks, were aware not only that the '505 Patent existed, but also that it disclosed subject matter material to the very limitations added by Mr. Hendricks and the other

'690 Applicants that the examiner believed to be both material to patentability and absent from the prior art of record. Indeed, the material information is featured in the abstract of the '505 Patent itself, which discloses the transmission of both textual information (capable of being tagged and indexed) and index information. Additionally, the material information appears in every independent claim of the '505 Patent, and would thus be unavoidable to one deciding whether or not to disclose it to an examiner, especially one as familiar with the general subject area as Mr. Hendricks. On information and belief, therefore, Mr. Hendricks and the other '690 Applicants failed to disclose the '505 Patent with the intent to deceive the examiner.

120.    As another example, Mr. Hendricks and the other '690 Applicants withheld from the examiner a prior art reference, U.S. Patent No. 5,461,667 to Remillard ("'667 Patent") ("Apparatus and Method for Electronic Device for Information Services") that was highly material to the patentability of the '690 Patent.

121.    The '667 Patent discloses a device and method for accessing remote electronic facilities and displaying associated information on a television set. Users select the applicable facilities, such as printing and email communication, and access information through a menu system. The abstract of the '667 Patent describes the use of menu data as a means of making user selections. Notably, the '667 Patent consists of only 17 pages, including only 8 pages of written text. Moreover, multiple claims teach the transfer of configuration data, including a method of assembling menus from the configuration data for use in selecting information such as textual information.

122.    Mr. Hendricks and the other '690 Applicants were indisputably aware of the '667 Patent because it was disclosed in at least four co-pending patent applications that were filed by Mr. Hendricks, and relating to similar subject matter. For example, the '667 Patent was

disclosed in the '194 Application ("Advanced Set Top Terminal For Cable Television Delivery Systems") on December 2, 1998, the '934 Application ("An Operations Center for a Television Program Packaging and Delivery System") on December 2, 1998, the '419 Application ("Targeted Advertisement Using Television Delivery Systems") on February 18, 1999, and the '574 Application ("Card for a Set Top Terminal") on December 2, 1998. Thus, on information and belief, not only were Mr. Hendricks and the other '690 Applicants aware of the '667 Patent but also well familiar with its contents and disclosure. However, neither Mr. Hendricks nor the other '690 Applicants disclosed the '667 Patent in the prosecution of the '690 Patent, even though the '690 Patent did not issue until November 16, 1999.

123.    In light of the foregoing, on information and belief, the '690 Applicants, including the inventor, Mr. Hendricks, were aware not only that the '667 Patent existed, but also that it disclosed subject matter material to the very claim limitations added by Mr. Hendricks and the other '690 Applicants in the January 26th Amendment that the examiner believed to be both material to patentability and absent from the prior art of record. Indeed, the material information appears in the abstract of the '667 Patent itself, and would thus be immediately apparent to anyone with knowledge of the patent and deciding whether or not to disclose it to an examiner. Additionally, the material information appears in multiple claims of the '667 Patent, and would thus be unavoidable to a reader of the patent, especially one as familiar with the general subject area as Mr. Hendricks. On information and belief, therefore, Mr. Hendricks and the other '690 Applicants failed to disclose the '667 Patent with the intent to deceive the examiner.

124.    Thus, on information and belief, the '690 Applicants, including the inventor, Mr. Hendricks, were aware of, but intentionally failed to disclose, sources that contained material and non-cumulative information with the intent to deceive the PTO.

125.     Pursuant to 28 U.S.C. § 2201(a), an actual and justiciable controversy has arisen

and exists between Amazon and Discovery.  Amazon is entitled to a judicial determination and

declaration that it has not infringed and is not infringing the '690 Patent and that the '690 Patent

is invalid and unenforceable.

<b>PRAYER FOR RELIEF</b>

WHEREFORE, Defendant and Counterclaimant Amazon prays as follows:

A.     That the Complaint against Amazon be dismissed in its entirety with prejudice

and that a Judgment be entered for Amazon;

B.     That Discovery take nothing by reason of its Complaint;

C.     For an injunction prohibiting Discovery, its officers, servants, employees, agents,

and attorneys, and all those in concert or participation with them who receive actual notice of the

injunction, from initiating infringement litigation against and from threatening Amazon, its

present or prospective customers, agents, servants, or employees, or users of Amazon's products,

with infringement litigation or charging any of them either orally or in writing with infringement

of the '851 Patent, or representing to any of them that infringement has occurred, because of the

manufacture, use, sale, or offer for sale of any Amazon products;

D.     That Amazon be awarded under 35 U.S.C. § 285 its attorneys' fees and costs of

suit incurred in this litigation, as Discovery's conduct as set forth above renders this an

exceptional case;

E.     For a judgment that Discovery has infringed, induced infringement of, and/or

contributorily infringed, literally or under the doctrine of equivalents, the '141 Patent and the

'133 Patent in violation of 35 U.S.C. § 271, and that those patents are valid and enforceable;

      F.      For an award of damages adequate to compensate Amazon for Discovery's infringement of the '141 Patent and the '133 Patent;

      G.      For preliminary and permanent injunctive relief restraining and enjoining Discovery and its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with it who receive actual notice of the order by personal service or otherwise, from any further infringement of the '141 Patent and the '133 Patent;

      H.      For an award of treble damages pursuant to 35 U.S.C. § 284;

      I.      For an award of pre-judgment and post-judgment interest and costs to Amazon in accordance with 35 U.S.C. § 284;

      J.      For a declaratory judgment that:

      i.   Amazon has not infringed and is not infringing either directly or indirectly any valid and enforceable claim of the '851 Patent or the '690 Patent, including through activities related to its Kindle, Kindle 2, and Kindle DX products;

      ii.   The claims of each of the '851 Patent and '690 Patent are invalid;

      iii.   Each of the '851 Patent and the '690 Patent is unenforceable; and

      iv.   Discovery, its officers, servants, employees, agents, and attorneys, and all those in concert or participation with them, are without right or authority to threaten or maintain suit against Amazon, its present or prospective customers, agents, servants, or employees, or users of Amazon's products, for alleged infringement of '851 Patent or the '690 Patent; and

      K.      For such other relief as the Court deems proper.

## DEMAND FOR A JURY TRIAL

Amazon demands a jury trial, pursuant to Fed. R. Civ. P. 38(b), on all Counterclaims and as to all issues that may be tried by a jury.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Josh A. Krevitt
Y. Ernest Hsin
Sarah E. Piepmeier
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 351-4000

Dated:  September 15, 2009
933215 / 34137

By:   _/s/ D. Fon Muttamara-Walker_
      Richard L. Horwitz (#2246)
      David E. Moore (#3983)
      D. Fon Muttamara-Walker (#4646)
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      Wilmington, DE  19801
      Tel:  (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com
      fmuttamara-walker@potteranderson.com

_Attorneys for Defendant Amazon.com, Inc._