```
                    UNITED STATES DISTRICT COURT
                 DISTRICT OF DELAWARE (Wilmington)


DISCOVERY COMMUNICATIONS, INC.,  )  09-CV-0178
                                 )
          Plaintiff,             )
                                 )
      vs.                        )
                                 )
AMAZON.COM INC.,                 )  Philadelphia, PA
                                 )  October 16, 2009
          Defendant.             )  2:00 p.m.



             TRANSCRIPT OF TELEPHONE STATUS CONFERENCE
             BEFORE THE HONORABLE EDUARDO C. ROBRENO
                  UNITED STATES DISTRICT JUDGE



APPEARANCES:


For the Plaintiff:          ELENA C. NORMAN, ESQUIRE
                            YOUNG CONAWAY STARGATT & TAYLOR
                            The Brandywine Building
                            1000 West Street, 17th Floor
                            P.O. Box 391
                            Wilmington, DE  19899



                            DAVID C. MELAUGH, ESQUIRE
                            MICHAEL E. JACOBS, ESQUIRE
                            MORRISON & FOERSTER
                            425 Market Street
                            San Francisco, CA  94105



For the Defendant:          RICHARD L. HORWITZ, ESQUIRE
                            POTTER ANDERSON & CORROON, LLP
                            1313 North Market Street
                            Hercules Plaza, 6th Floor
                            P.O. Box 951
                            Wilmington, DE  19899



                            Y. ERNEST HSIN, ESQUIRE
                            GIBSON DUNN & CRUTCHER, LLP
                            1881 Page Mill Road
                            Palo Alto, CA  94304



Audio Operator:             JOSEPH MATKOWSKI
```

```
Transcribed by:          DIANA DOMAN TRANSCRIBING SERVICES
                         P.O. Box 129
                         Gibbsboro, NJ  08026
                         Office:  (856) 435-7172
                         Fax:     (856) 435-7124
                         E-mail:  dianadoman@comcast.net
```

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

I N D E X

ARGUMENT:                                    PAGE NUMBER

   By Mr. Horwitz                            5, 9, 18

   By Mr. Jacobs                             6, 15, 20

   By Mr. Hsin                               23

1        (The following was heard in open court at 2:00 p.m.)

2        THE COURT:  Good afternoon.  This is Judge Robreno

3    and we are on the record.  Let me just call the roll here.

4    Ms. Norman, are you there?

5        MS. NORMAN:  Yes, Your Honor.

6        THE COURT:  Okay.  And who are your colleagues?

7        MS. NORMAN:  My colleagues are Michael Jacobs and

8    David Melaugh of Morrison Foerster in San Francisco.

9        THE COURT:  Okay, very well.  And let's see -- for

10   the defendants, Mr. Horwitz?

11       MR. HORWITZ:  Yes, Your Honor, Richard Horwitz here.

12       THE COURT:  And anybody with you?

13       MR. HORWITZ:  Yes.  With me I have Ernest Hsin, H-S-

14   I-N, from Gibson, Dunn and Crutcher, also in San Francisco.

15       THE COURT:  Okay, very well.  Let's proceed here.

16   As I understand it, the issue here is to come up with a

17   discovery and management plan that will aim for a date for a

18   Markman hearing and a date for trial in this matter and after

19   appropriate discovery and export reports, et cetera, and I

20   have reviewed your submissions.

21       The recent experience that I had here, and I think

22   that involved, Ms. Norman, your firm in another case, seemed

23   to lead me to conclude that any dates beyond the Markman

24   hearing are somewhat illusory because until we have a claim

25   construction determination by the Court, then the focus of

1    your discovery and export reports, et cetera, will  remain

2    somewhat imprecise so that what we did there was to set a

3    schedule for a Markman hearing and allow the Court some period

4    of time to make those determinations and then arrange to get

5    together for a status and scheduling conference at that point

6    to determine with greater specificity what was going to happen

7    beyond that; that is, to kind of do this is two steps.  That

8    would be one suggestion that I would have.

9              MR. HORWITZ:  Your Honor, this is Rich Horwitz for

10   Amazon.

11             THE COURT:  Right.

12             MR. HORWITZ:  We would be happy to work with that

13   kind of schedule and I know that we've done that on occasion

14   with some of our Judges here in Delaware where you then

15   trigger things off of the Markman decision --

16             THE COURT:  Right.

17             MR. HORWITZ:  -- so either by having a status

18   conference or by saying a report will be due so many days

19   afterwards, so we think it would be fine to just try to come

20   up with a schedule that would include what the parties have

21   proposed in -- in the two charts which are identical.

22   Unfortunately the two columns are different because we had

23   different dates --

24             THE COURT:  Right.

25             MR. HORWITZ:  -- but to just go up through the

1    Markman hearing and then just schedule perhaps a status

2    conference within so many days after Your Honor rules.

3              THE COURT:  Yes.  Okay.  Now, what do you think, Ms.

4    Norman, of that approach?

5              MS. NORMAN:  Your Honor, I'm going to defer to my

6    co-counsel, Mr. Jacobs --

7              THE COURT:  Okay.

8              MS. NORMAN:  -- on this question.

9              THE COURT:  Okay, Mr. Jacobs?

10             MR. JACOBS:  Good afternoon, Your Honor.

11             THE COURT:  Good afternoon.

12             MR. JACOBS:  I understand the logic of the

13   sequencing and almost bifurcating in a way.  The contrary view

14   which I urge is that trial dates resolve cases, setting trial

15   dates resolves cases, setting early trial dates resolves cases

16   early and the -- so the particular concern that I would have

17   with a sequential approach like this is that it would rather

18   than -- my experience with sequential approach is that -- it's

19   sort of the inexorable logic of things the cases tend to drift

20   along a bit, whereas with the urgency of a -- of a set trial

21   date and earlier set trial date, everybody focuses, everybody

22   gets the job done and if the case is going to resolve, it gets

23   resolved earlier rather than on a protracted basis.

24             THE COURT:  Well, let me ask you a question.  During

25   the time, in your experience, during the time that we are

1   going through the Markman hearing process, would you also be

2   doing fact discovery and expert discovery and et cetera or

3   does -- because I see -- I see in your proposed protocol, it

4   says close of fact discovery.  I don't know if that means that

5   you have been conducting fact discovery all along.

6            MR. JACOBS:  Yes, we would be and I think fact

7   discovery doesn't turn that much on the claim construction and

8   in fact, it really doesn't turn at all.  In the case of our

9   discovery of Amazon here on our offensive patent claims, our

10  discovery is about their device and confirming the

11  infringement allegations and then it's about damages

12  unaffected by claim construction.

13           Similarly, they're going to do discovery on how we

14  came to the invention and the story of the invention and all

15  that.  Again, doesn't claim -- doesn't turn on claim

16  construction.  Expert -- you'll see from our sequencing, we do

17  have in mind that in that period you would issue and I guess

18  implicit in our schedule is that you would issue a claim

19  construction order, expert discovery, expert reports.

20           One of the principle benefits of doing early Markman

21  is it does shape the expert discovery and reports.  So I do

22  agree with -- with having expert work come after a claim

23  construction ruling.

24           THE COURT:  So what about -- let me just follow up

25  on that.  Maybe an alternative here could be to have -- to

1    proceed on the basis of -- you know, the Markman hearing, but

2    also include a -- coextensively with the preparation for the

3    Markman hearing would be fact discovery.  In other words, they

4    could be conducted on parallel tracks.  One needs not await

5    conclusion of the other to take the first step.  But in any

6    event, the trial date and the expert reports, et cetera, would

7    be -- would flow out of the Court's determination after a

8    Markman hearing.

9            MR. JACOBS:  I strongly urge the parallel approach

10   that you're suggesting there and if one looks at the various

11   local rules that have been adopted around the country to try

12   and make this systematic, fact discovery does proceed in

13   parallel with the -- or before Markman so that would be

14   consistent with what the practices are that have been adopted.

15           And the only thing I would suggest, Your Honor, and

16   on the second point is that if you were to have in mind now a

17   trial date -- and one of the things that we find attractive

18   about Your Honor's general practice is that Your Honor likes

19   to move cases along pretty rapidly -- if we set a trial date

20   now, it will really focus people and everybody will know yes,

21   we're going to trial on this date and that I think has

22   salutary benefits -- systematically salutary benefits.

23           MR. HORWITZ:  Your Honor, if I could respond in view

24   of the plaintiffs --

25           THE COURT:  Yes.

1           MR. HORWITZ:  This is Rich Horwitz again.

2           THE COURT:  Okay.

3           MR. HORWITZ:  We agree with everything Your Honor

4   has suggested.  We think that it would make sense to have

5   parallel fact discovery with -- you know, the work that leads

6   up to Markman.  We do disagree with the notion that fact

7   discovery has nothing to do with Markman because we think

8   there will be fact discovery that both sides will take with

9   respect to each other's patents, depositions of the inventors,

10   and other discovery that may relate to claim construction.

11           We all know that the intrinsic record is where you

12   go first, but there's also extrinsic evidence.  So I think

13   that some fact discovery can be relevant to the Markman

14   process.

15           The problem with what Mr. Jacob is saying, and I

16   think it's why Your Honor is -- is inclined to reject that

17   view, at least initially, your thoughts are is that when you

18   have all those back end dates in when you don't know when

19   you're going to get the decision, then you're left with a

20   problem which we face with some Judges where your experts have

21   to do reports when you don't know what the claim construction

22   is yet so your experts have to say well, if this term means X,

23   then they infringe because of Y or they infringe because of Z,

24   so you have to go through a lot of extra work.

25           And I think that what you're suggesting is that as

1    long as we get back together quickly after Your Honor rules,

2    we'll be able to have a schedule in place.  So I'm not sure

3    that the problems that Mr. Jacobs is concerned about really

4    are real ones, as long as we get back with the Court quickly

5    after we get a Markman ruling and we understand that there is

6    going to be a schedule that would put things on track shortly

7    from there.

8            Now, we have some disagreements as you can see from

9    the chart as to the overall approach about how long this will

10   take and I think we'll still have some disagreements if we get

11   there about how long expert discovery would take after a

12   Markman hearing, but we can resolve those with you.  They have

13   a couple of weeks for expert reports and we have more like a

14   month, which I know is typical in our practice in Delaware.

15   I'm not sure -- you know, what -- what Your Honor typically

16   does.

17           But those kind of details can be worked out so I

18   don't think that the parade of horribles is really going to be

19   there and I think that for organized case management, it makes

20   sense to know where you are after the first phase and then say

21   okay, we're going to get from here to the end.

22           THE COURT:  Okay.  You see, I'm inclined to adopt

23   the view that we ought to walk before we run and since I think

24   Mr. Horwitz referred to our general practice, let me just say

25   a couple of words about that.  One, I mean, as a matter of

1    general case management, I agree that and my experience is

2    that attempting to over-manage a case is generally

3    counterproductive and that having phases, et cetera, generally

4    doesn't work.

5           I think as with most rules, there is room for

6    exceptions and this kind of a practice seems to me is one

7    where a -- at least a limited exception is valid because the

8    -- the other aspect of it is what makes the system work is the

9    credibility of the Court that these things are actually going

10   to happen.

11          As both of you know, sometimes there are dates that

12   are set up and et cetera, but they're either too far into the

13   future to be able to deal with all of the contingencies that

14   occur in normal life, never mind the litigation.  And number

15   two, the culture of the Court is such that the dates are not

16   really -- not all that meaningful.

17          So I think we commit to meaningful dates and to a

18   culture and to a practice that the case will move along as a

19   basis of whether we pick the date now or we pick the date six

20   months from now is going to be a reasonably firm date that we

21   would do that.  So, I wouldn't worry too much about that, Mr.

22   Horwitz.

23          If we pick one now or if we pick one in six months,

24   it's still going to be pretty much we're going to get to the

25   end about the same time.  So this is what I would like to do.

1    I think I'd like to set up a phase one in this case that will

2    take us through Markman and the conclusion of fact discovery

3    and just for the simplicity of scheduling, that we pick a date

4    and what I would have in mind in looking at both of the

5    schedules that you proposed -- which by the way, one thing

6    that is missing here is of course I don't have the slightest

7    idea of what you're going to do for fact discovery, whether

8    it's you know -- 10,000 depositions or three or five, so I am

9    missing that piece.

10            So I really only have your bookends in a sense and

11   an inclination that I think that if we put our minds to it,

12   these things can get done.  So my suggestion would be that we

13   take from today is October 13th (sic) and we set a Markman

14   hearing for the middle of March and that will be both the

15   close of fact discovery and the Markman hearing.

16            With that in mind, you can tweak some of these --

17   some of these dates.  It just strikes me for example that I

18   don't know why you need a deadline for amending the pleadings

19   or to join parties so far into the future.  I think we can

20   have a much earlier deadline than April 2nd.  I think that if

21   there was a reason, there could always be leave requested

22   throughout a party which for some reason did not come within

23   the calculus or the radar of the party at that time.

24            So I think that can be corrected, and I think the

25   two of you are in a better position to work -- to work these

1    deadlines and massage them in a way that would be most

2    convenient to both of you with the understanding that we will

3    have a Markman hearing on the 13th of March and that also that

4    is the date at which time fact discovery will be concluded.

5         What will happen is we will hold a hearing -- one

6    day, more, depending upon what is needed.  The Court -- you

7    know, will commit to a prompt decision and then we will get

8    together and plan out the rest of the case with the general

9    understanding that a trial after the Markman hearing has been

10   concluded will take place somewhere between -- you know, we

11   will endeavor to then set a trial date within 180 to 210 days

12   down the road.

13        You know, things happen and we may have to adjust

14   this but that would be our -- you know, our sort of general

15   strategy for moving this case along.  So that's what I would

16   suggest.  So let me start with Mr. Horwitz.  Can you live with

17   that?

18        MR. HORWITZ:  Yes, Your Honor.  Yes, Your Honor, I

19   think it would be useful to give you a little bit of detail

20   about this case because the schedule that you're proposing is

21   an extremely aggressive one, at least based on my experience

22   with other cases here in Delaware.  We have four patents, we

23   have I think over 275 claims in those patents.  There are

24   several inventors.

25        We had suggested 25 depositions for each side in our

 1      status report on page four --

 2              THE COURT:  Okay.

 3              MR. HORWITZ:  -- not including third party

 4      depositions, and we -- you know, we proposed a schedule that

 5      was -- that was more in line with the typical Delaware

 6      schedule which was a couple of years to get to a trial and I

 7      just think that this schedule is extremely aggressive and Mr.

 8      Hsin may want to add some points if there are some specifics

 9      that he knows.

10              But just based on my understanding of the case --

11      you know, they had proposed a March date; we had proposed a

12      November date for close of fact discovery and -- and we're not

13      trying to drag it out but I think that we're probably going to

14      need more time than what Your Honor has anticipated maybe

15      before you had a chance to hear the little bit of background

16      that I did give you about the fact here.

17              So I would ask Your Honor to reconsider the timing a

18      little bit and maybe pick a date if you can't go as far as we

19      want, at least something that's somewhere in between.

20              THE COURT:  Okay, so what would you suggest?

21              MR. HORWITZ:  Well, we suggested November but

22      obviously that seems to be too far past your radar so --

23              MR. JACOBS:  Your Honor, this is Michael Jacobs

24      for --

25              THE COURT:  Yes.

1            MR. JACOBS:  -- for discovery --

2            MR. HORWITZ:  I'm sorry, if I could just finish and

3    make the suggestion.  Four months later puts us in July, Your

4    Honor.

5            THE COURT:  Okay.  Let me see what Mr. Jacobs has to

6    say.

7            MR. JACOBS:  Your Honor, this is a case where what's

8    sauce for the goose is sauce for the gander so when we make a

9    proposal to you, it's something that we have to be willing to

10   live by too.  I think you're getting a preview of the

11   differing approaches to the litigation from the two sides in

12   what Amazon is proposing to you, for example, by way of

13   deposition limits.

14           We just think 25 depositions is way beyond what a

15   case like this needs and the time that they're asking for,

16   it's consistent with that kind of approach to the case of

17   instead of teeing it up for a decision, burying everybody in a

18   lot of paper.  I don't have a -- I truly don't have a problem

19   with a couple of extra weeks on the schedule.  I just -- you

20   know, don't want to quibble about that sort of thing but I

21   don't think it needs anything like what Amazon is asking you

22   for.

23           THE COURT:  Okay.  Well, let's -- I'll yield to the

24   good faith of Mr. Horwitz.  I take him at face value but I

25   think maybe -- maybe we're building every problem into every

1    solution.  So why don't we then say May 15th will be the date,

2    so I think that accommodates everyone.  So what I would

3    suggest that you do is then that you go -- the two of you go

4    back and try to rework these interim deadlines because -- you

5    know, you may find in your experience that you need more time

6    for certain items and I know that December dates are -- you

7    know, often difficult to meet, et cetera, so I would leave

8    that up to you.

9           But we'll go with May 15th and then we'll -- that

10   will be both for fact discovery and the Markman hearing and

11   we'll go with a commitment by the Court to have an early

12   decision on the Markman issues and to get together promptly

13   after that decision to set out a schedule that will get us to

14   trial as I indicated -- you know, hopefully within 180,

15   certainly no more than 210 days after those determinations are

16   made.

17          MR. HORWITZ:  Your Honor, I just looked at my

18   calendar for next year --

19          THE COURT:  Yes.

20          MR. HORWITZ:  -- and May 15th is a Saturday.

21          THE COURT:  Okay.

22          MR. HORWITZ:  So unless you want us to come to Court

23   on Saturday --

24          THE COURT:  No, no, we'll -- do you think this will

25   be a one day hearing or will it be longer than that?

1          MR. JACOBS:  Your Honor, I -- this is for the

2     plaintiff -- I believe one day should be -- you should make us

3     do it in one day.

4          THE COURT:  Okay, well --

5          MR. JACOBS:  If we can't, we're not doing a good

6     job.

7          THE COURT:  Well, let's make it May 14th.

8          MR. JACOBS:  Okay.

9          THE COURT:  No.  There is -- if we could move to

10    another topic, there was a motion to sever and transfer

11    certain claims, is that right?  Is that pending?

12         MR. JACOBS:  Yes, Your Honor.  We have filed that

13    motion a couple of days ago.

14         THE COURT:  Okay.  And what's your thinking there?

15    I don't mean to here and now, but you'd like to have the

16    claims -- some going to Washington and some staying here?

17         MR. JACOBS:  Yes.  We filed our case against Amazon

18    in Delaware --

19         THE COURT:  Yes.

20         MR. JACOBS:  -- and then in response, Amazon filed

21    two sets of claims, if you will, against us -- against

22    Discovery, one on four patents in Seattle directed at our e-

23    commerce activities -- when -- if you go to discovery.com you

24    can buy stuff on the web, and then added counter-claims in the

25    Delaware action on two patents also directed at the

1   discovery.com e-commerce site.  Their view is the patents are

2   different so it doesn't -- it's okay to be in different fora.

3   Our view is the target is the same and so let's have it all in

4   Seattle.

5          They chose Seattle.  It's actually their home forum.

6   Amazon is based in Seattle.  We're willing to go to their home

7   forum but it seemed to us that it made sense to have their

8   claims all in one place, again, trying to diminish a kind of a

9   multiplication of proceedings.

10          THE COURT:  Okay.  So what's going to be the

11  response here, just generically?

12          MR. HORWITZ:  Well, Your Honor -- and this is Rich

13  Horwitz --

14          THE COURT:  Yes.

15          MR. HORWITZ:  -- and as counsel said, they filed the

16  motion  just a few days ago so I can just speak broadly in

17  response.

18          THE COURT:  Yes.

19          MR. HORWITZ:  First it was a motion that was filed

20  -- the complaint was filed in March.  We filed an answer in

21  May.  There was about a one month period where we were talking

22  but it's been about five months when they could have filed

23  this motion for them to actually file it and the Washington

24  case has gone forward.  Counsel is right that both sets of

25  claims are directed to their e-commerce site but what counsel

1    didn't mention is that the patents are totally unrelated,

2    directed to totally different aspects of the site, dealing

3    with different inventors, different claim language.

4            Just to let you know, Your Honor, the claims that

5    are in this case -- the Delaware case, deal with third party

6    affiliate programs which allow other people to sell things on

7    their websites so that part of it is directed toward sellers.

8    The patents that are involved in the Washington case, on the

9    other hand, go towards consumer issues.

10           And I don't know if Your Honor is familiar with this

11   in going on amazon.com or other sites where sometimes based on

12   your experience, while you've been on the site before, there

13   are certain algorithms and things that are done and then they

14   make recommendations to you about other things you might want

15   to purchase.

16           THE COURT:  Right.

17           MR. HORWITZ:  So these are two completely different

18   concepts, one going to who sells and one going to what you

19   might want to buy.

20           THE COURT:  Okay.  But the point is that you're not

21   -- you're not going to agree to this.  You think this --

22           MR. HORWITZ:  No.

23           THE COURT:  Okay.

24           MR. HORWITZ:  No, we're not going to agree to it.

25           THE COURT:  Let me ask you this.  Is the outcome of

1    that determination going to impact on Markman?

2            MR. HORWITZ:  It -- I think it will impact on the

3    size.

4            THE COURT:  Yes.  In other words, it will either

5    narrow or -- narrow the number of claims so --

6            MR. HORWITZ:  Exactly, because there are -- I think

7    there are over 200 claims in their patents and I don't know

8    whether it's 50 or 60 or 70 potential claims in our patents.

9    So it's either going to be claims coming from four patents --

10   two on each side, or claims coming from two patents, if Your

11   Honor were to grant their motion.

12           THE COURT:  Now, let me ask you then another

13   question and maybe a broader question.  To what extent is the

14   Washington litigation -- even though they may not overlap in

15   terms of patents or claims, but are the same players going to

16   be involved?

17           I mean, are these two going to require some

18   coordination or do you view them as a completely separate

19   universe and we do our thing and they do theirs and that's the

20   way it is, or is there going to be some discovery that is

21   going to overlap?  What are your respective views here?

22           MR. JACOBS:  This is Michael Jacobs, Your Honor.

23   There are -- there will be the need to coordinate, and to take

24   one example, one of the issues that comes up if you separate

25   proceedings in the way that Amazon has here is how does the

1    damage -- what's the damages model.  Their target is the

2    discovery.com e-commerce operation.  There are a bunch of

3    patents they're suing on seeking a royalty in Washington.  How

4    does that relate to the damages they'd be seeking in Delaware?

5    Their target is the discovery.com e-commerce operation.

6            When it comes to discovery -- and I'm going to have

7    to use discovery in two different ways here given the name of

8    our client -- when it comes to discovery under the Federal

9    Rules, there will be a need for us to figure out if it's two

10   separate proceedings how we're going to coordinate that

11   discovery.  The Washington case does have a schedule but it's

12   just at its very beginnings and it would not -- I think the

13   argument that it would be disrupted if it gets two more

14   patents, it doesn't have any significant weight.

15           THE COURT:  How -- what are the deadlines in the

16   Washington case?

17           MR. JACOBS:  They are out a couple of years.

18           THE COURT:  Okay.

19           MR. JACOBS:  Frankly, Your Honor, the docket

20   practices, I like your -- I really like your expression "the

21   culture of the Court."  The --

22           THE COURT:  Well, the West coast, they do things a

23   little slower, you know?

24           MR. JACOBS:  You're exactly --

25           THE COURT:  You're more laid back.

1          MR. JACOBS:  You're exactly right.

2          THE COURT:  But they live longer, you know.

3          MR. JACOBS:  Especially in Seattle but that's the

4   forum that Amazon chose for four of their patents --

5          THE COURT:  Okay.  Who is the Judge there, by the

6   way?

7          MR. HSIN:  Your Honor, this is Ernie Hsin for

8   Amazon.  The Judge is Judge Lasnik --

9          THE COURT:  Okay, thank you.

10          MR. HSIN:  -- in Seattle.

11          MR. JACOBS:  We have a pretrial conference -- we

12   have a pretrial order date, if I'm reading this correctly, of

13   February 23rd, 2011.

14          THE COURT:  Okay.  Okay, so let me just throw

15   something out as well, but I will be in a better position once

16   I get the response to the motion --

17          UNIDENTIFIED SPEAKER:  Your Honor, I don't know if

18   you'd like to hear but I'm only involved in the Delaware case.

19   I think our view is a little bit different --

20          THE COURT:  Okay.

21          UNIDENTIFIED SPEAKER:  -- and the relationship

22   between the two cases so maybe Mr. Hsin can respond to Mr.

23   Jacobs' comments --

24          THE COURT:  Please.  Okay, that would be fine.

25          MR. JACOBS:  I think Your Honor had some views for

1    us and it would be --

2              THE COURT:  Well, let me hear Mr. Hsin.  If you want

3    to tell me anything further and then that will educate me.

4              MR. HSIN:  Certainly, Your Honor.  I just wanted to

5    point out one thing that Mr. Jacobs did mention is that there

6    are different -- there are different inventors that are for

7    the different patents.  There are different third parties that

8    have been preliminarily identified by both sides as being

9    related to the different -- the patents in the two different

10   jurisdictions.

11             So I think the idea that there's going to be a lot

12   of overlap of discovery and issues is not quite true.  The

13   other thing I would point out is on the issue of where the

14   schedules are.  The Washington case is actually pretty far

15   along.  We served -- Amazon served infringement contentions --

16   over 300 pages of infringement contentions yesterday in the

17   Washington case and discovery is -- non-infringement and

18   invalidity contentions are going to be due in just a few

19   weeks.

20             So if the patents in Delaware were to be transferred

21   to Washington, it would require -- and this is -- is the

22   facts, just because these things have already been done, it

23   would require a different track.  For infringement

24   contentions, invalidity contentions and all of the things that

25   flow from that because of by virtue of the fact that those

1    things have already been done in Washington and now if you're

2    bringing in new patents to the Washington case, you would

3    essentially be putting that case on two different tracks.

4              THE COURT:  Okay.  Well, I think I'll be in a better

5    position once we get your written responses.  What I was just

6    kind of trying to understand here is whether the -- whether or

7    not these claims belong here or they would more appropriately

8    before the Court in Washington.

9              Whether that may depend upon the outcome of the

10   Markman hearing or not -- maybe I'm not on the right track but

11   in order to be able to understand the nature of these claims

12   and to be able to see how they compare to the Washington

13   claim, whether we can do this in sort of -- in the abstract at

14   this point without subjecting them to -- you know, to the

15   close scrutiny of a Markman hearing.

16             MR. HSIN:  Your Honor, this is Ernie Hsin again.  I

17   don't think that it will require going through the claim

18   construction process for Your Honor to see whether the patents

19   at issue in Washington are different or not from the one in

20   Delaware.

21             THE COURT:  Okay, very good.  Okay, well why don't

22   we do this.  Let's move forward with these dates but I'll wait

23   for you to submit to me maybe within the next couple of weeks

24   a new -- the sort of interim deadlines that you would like to

25   pursue and I ordinarily, if during the course of the

1   litigation some of these interim deadlines need to be changed,

2   so long as the final deadline is not affected, it really

3   pretty much allows the parties to do that and just to notify

4   me by letter -- you know, for example, exchange draft claim

5   constructions.

6           If it was going to be December 16th and you said gee

7   -- you know, why don't we have another week or until the 23rd

8   -- you know, we don't have to go through a process of -- you

9   know, amending the scheduling orders because these are interim

10  deadlines really more for the guidance and convenience of the

11  parties.  They don't really affect the ultimate direction of

12  the litigation.

13          So they're guide posts and guidelines that I think

14  the lawyers can manage much better and more efficiently than

15  getting the Court involved.  So why don't you go ahead and

16  work this out in the next couple of weeks and then send them

17  to me and I'll incorporate it into the scheduling order number

18  one.

19          MR. HORWITZ:  Your Honor, this is Rich Horwitz.  One

20  date that I think it would be useful to know since we'll work

21  back from there --

22          THE COURT:  Yes.

23          MR. HORWITZ:  -- if we have the Markman hearing on

24  May 14th, how far in advance of that do you want the last

25  briefs to be in your hands?

1          THE COURT:  Well, probably -- let's see, you had

2    planned that about 30 days I think in both of yours and their

3    -- you have 30 days so that's fine.

4          MR. HORWITZ:  30 days before hand?  Okay.

5          THE COURT:  Yes.

6          MR. HORWITZ:  Actually, Your Honor, I'm sorry --

7          THE COURT:  Yes.

8          MR. HORWITZ:  The two proposals were -- I think they

9    were both about 14 days.

10          THE COURT:  Okay.  Well -- oh yes, I see, the

11    response -- 14 days will be fine, yes.  Yes, 30 days were for

12    the opening brief, yes.

13          MR. JACOBS:  14 days it is, Your Honor.  Thank you

14    very much.

15          THE COURT:  Okay, very good.  I look forward to your

16    submissions in a couple of weeks.  Thank you.

17          (Proceedings concluded at 2:34 p.m.)

18                              * * *

19

20

21

22

23

24

25

## C E R T I F I C A T I O N

I, Diane Gallagher, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.


_____    November 3, 2009

DIANE GALLAGHER

DIANA DOMAN TRANSCRIBING